Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7828 | **DATE** | 9/4/2002 |
| **CASE TITLE** | Manuel Lara vs. Central Grocers Cooperative, Inc., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [16-1] is denied. Status hearing is set for 10/8/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 3 number of notices |
| ✓ | Notices mailed by judge's staff. | SEP 05 2002 date docketed |
| | Notified counsel by telephone. | CV docketing deputy initials |
| | Docketing to mail notices. | 9/4/2002 date mailed notice |
| | Mail AO 450 form. | MD mailing deputy initials |
| | Copy to judge/magistrate judge. | |

| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | Document Number 27 |
|---|---|---|---|

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 05 2002

| | | |
|---|---|---|
| **MANUEL LARA,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 00 C 7828** |
| | ) | **Judge Joan H. Lefkow** |
| **CENTRAL GROCERS COOPERATIVE, INC., STEPHEN BANAS, AND JOHN COARI,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Manuel Lara ("Lara"), brings this lawsuit pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. §§ 2601 *et seq.*, alleging that defendants Central Grocers Cooperative, Inc. ("Central"), Stephen Banas ("Banas"), and John Coari ("Coari"), unlawfully terminated him after denying him intermittent unpaid absences to treat his serious medical conditions. Before the court is defendants' motion for summary judgment. The court has jurisdiction over the claims pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331. For the reasons set forth below, the court denies defendants' motion for summary judgment.

**SUMMARY JUDGMENT STANDARDS**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of

27

material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**FACTS**[1]

Central, a grocery distributor, employed Lara as a jeep driver beginning in 1985. Lara maintained that position until October 21, 1999, when he was fired due to excessive absenteeism. Lara suffers from multiple health problems, having been diagnosed with coronary artery disease in 1996 and diabetes in 1998. Since these medical conditions surfaced in 1996, Lara has been absent from work intermittently up until the time he was fired in 1999.

Central's attendance policy states that "[w]hen an employee is absent from work for consecutive days for the same reason, the entire period of absence will count as a single day, provided a medical excuse accompanies the employee's return to work with the date of the disability listed." (*See* Def.'s 56.1 Statement, ¶ 14, citing Ex. C thereto; Pl.'s Resp. to Def.'s

[1]The facts set forth herein are taken from the parties' Local Rule 56.1 Statements and read in the light most favorable to plaintiff, the nonmovant. The court notes that defendants initially did not include a Local Rule 56.1(a)(3) Statement of Material Facts with their motion for summary judgment but, after this was brought to the attention of the court by plaintiff, were given leave to supplement their motion to include such statement. They did so and plaintiff filed a Local Rule 56.1(b)(3)(A) response as well its own Local Rule 56.1(b)(3)(B) Statement of Additional Material Facts. Defendants did not file a response to plaintiff's Statement of Additional Facts.

56.1 Statement, ¶ 14.) The attendance policy also provides that employees who are absent twelve times in a twelve-month period will be discharged regardless of the reason for the absences. The policy does not mention the FMLA. (*Id.*) Defendants did, however, have a poster placed in the employee lunch room explaining employee rights under the FMLA. (*See* Pl.'s Statement of Add'l Facts, ¶ 7.)

Lara was chronically absent during his later employment years at Central. While the record is not entirely clear as to how much time Lara missed, it appears that he was regularly absent on Mondays and Fridays. Defendants requested that Lara obtain medical certification from his treating physician regarding his absences.[2] On February 21, 1999, Lara's physician, Dr. Franklin Saksena, released Lara to work with no restrictions. Shortly thereafter, on or about February 25, 1999, Dr. Saksena provided Lara a note stating that

> Mr. Lara has coronary artery disease. He has chest pain and needs to take nitroglycerin to relieve the pain. This means he may need to be absent from work on a periodic basis. He also has diabetes for which he is being treated. He needs to come to the [physician's] office a minimum of every 6 weeks for evaluation.

On March 2, 1999, Lara attended a meeting with two of his supervisors, Coari and Banas, and a union representative to discuss his absences and physical condition. At this meeting, Coari called Dr. Saksena to clarify the meaning of the February 25 note, but Dr. Saksena was not in his office. Coari wished to have Dr. Saksena clarify exactly what "periodic" meant, and whether Lara was required to miss work. Also at this March 2 meeting, Lara was informed that he would be terminated without the benefit of another union meeting should he be absent from work or

---

[2]Defendants do not specify when Lara was initially asked to provide this information, although defendants claim that it was throughout 1999. (Mem. of Law in Supp. of Def's Mot. for Summ. J., at 4.)

leave early. After this March 1999 meeting Lara continued to miss work intermittently up until the time he was fired.

On or about March 4, 1999, Dr. Saksena returned Coari's call on Coari's cellular phone while Coari was at his daughter's basketball game. Coari maintains that during the conversation Dr. Saksena stated that Lara only needed to take his medication and could continue to work and never told Lara not to work or that he should be off on certain days. (Def.'s 56.1 Statement, ¶ 14.) While Lara acknowledges that Dr. Saksena spoke with Coari, Lara maintains that they spoke about whether Lara was a danger to others and Dr. Saksena did not offer an opinion as to why Lara was absent. (Pl.'s Resp. to Def.'s 56.1 Statement, ¶ 20.) Dr. Saksena could not remember specifically telling Coari that Lara did not need to leave work. (Saksena Dep. at 35.)

Lara attended another meeting with Banas, Coari, and a union representative on August 16, 1999. At this meeting, Lara was given a one-day suspension for his absences, and a further warning about future absences. Defendants contend that at this meeting Lara either was asked, or voluntarily agreed, to provide a recertification, but he subsequently failed to do so. (Def.'s 56.1 Statement, ¶¶ 25 & 26.) Lara maintains that defendants did not ask and Lara did not agree to provide for a recertification at this meeting. (Pl.'s Resp. to Def.'s 56.1 Statement, ¶¶ 25 & 26.)

On October 21, 1999, Lara attended a final meeting with Banas, Coari, and a union representative to review his attendance since the March 1999 meeting. Defendants contend that once again, at this meeting, they asked Lara for documentation concerning his absences. (Def.'s 56.1 Statement, ¶ 27.) Plaintiffs maintain that notes of the meeting say nothing about such a request being made. (Pl.'s Resp. to Def.'s 56.1 Statement, ¶ 27.) At this meeting, Lara was

informed that he had exceeded the absence limit in the attendance policy and he was terminated, effective immediately.

## ANALYSIS

The FMLA applies only to "eligible employees." An eligible employee is an employee that has been employed for 12 months and has worked at least 1,250 hours in the previous 12-month period for an employer that employs 50 or more people and engages in interstate commerce. 29 U.S.C. § 2611(2) & (4); *Stoops* v. *One Call Communications Inc.*, 141 F.3d 309, 311 (7th Cir. 1998). Defendants admit that Lara qualifies as an eligible employee under the FMLA.

An eligible employee is entitled to a leave period of twelve workweeks during any twelve month period for one of four enumerated reasons. 29 U.S.C. § 2612(a)(1). The employee may take this leave intermittently. 29 U.S.C. § 2612(b). In this case, Lara claims to be eligible for leave based on § 2612(a)(1)(D): "a serious health condition that makes the employee unable to perform the functions of the position of such employee." This requires both that the employee (1) have a serious health condition as defined by the FMLA, and (2) that the condition prevent the employee from performing his job. *Stoops*, 141 F.3d at 312. When requesting leave, the employee need not mention or even be aware of the FMLA benefits. The employer has sufficient notice if the employee provides the employer with "enough information to put the employer on notice that FMLA-qualifying leave is needed." *Stoops*, 141 F.3d at 312.

When an employee gives an employer notice that FMLA leave is needed, the employer must provide specific written notice of the employee's rights and duties under the FMLA. 29 C.F.R. § 825.301(b)(1)(ii). Notice is required to be given to the employee. 29 C.F.R.

§ 825.301(b)(1). Also, when the employee gives the employer notice that leave is needed, the employer is "expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303. An employer may require that leave under § 2612(a)(1)(D) "be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). The employer may also require that the employee obtain subsequent recertifications "on a reasonable basis." 29 U.S.C. § 2613(e).

Lara claims that his termination violated the FMLA because his absences should have been treated as intermittent leave under the FMLA and not as absences subject to Central's attendance policy. Defendants contend they are entitled to summary judgment because Lara's leave did not qualify as "medically necessary leave" under the FMLA or, in the alternative, Lara did not provide recertification from his treating physician despite defendants' requests to do so.

**A. Medically Necessary Leave**

Defendants do not dispute that Lara's coronary artery disease and diabetes constitute serious health conditions. Rather, they contend that Lara's conditions did not prevent him from missing work, the second requirement under § 2612(a)(1)(D). An employee is "unable to perform the functions of the position" when a health care provider finds that the employee is unable to work at all or is unable to perform any of the "essential functions" of the employee's job at the time the need for FMLA leave arose. 29 C.F.R. § 825.115. Defendants rely on the statements they claim Dr. Saksena made to Coari clarifying his note of February 25, 1999. Defendants argue that when Dr. Saksena returned Coari's call, he stated that Lara needed only to take his medication and continue to work, and that Dr. Saksena never told Lara not to work or that he should be off on certain days. On the basis of this so-called "negative certification,"

defendants maintain that they had no reason to think that Lara's continuing absences were medically necessary or qualifying under the FMLA.

Defendants rely on the Seventh Circuit's *Stoops* opinion. In *Stoops*, plaintiff Stoops, One Call's employee, was fired for excessive absences pursuant to One Call's no-fault attendance policy. *Stoops*, 141 F.3d at 310. Stoops was instructed to obtain medical certification from a physician that his illness, chronic fatigue syndrome, was a serious health condition that prevented him from performing his duties. *Id.* at 311. Stoops' physician indicated that while Stoops' chronic fatigue syndrome was a serious health condition, he was not presently incapacitated and did not need to work intermittently or on a reduced work schedule. *Id.* Using this negative certification as their basis, One Call informed Stoops that his doctor indicated he did not qualify for FMLA leave, and that all future absences would count against him under One Call's no-fault attendance policy. *Id.* The court found that Stoops could have obtained a medical opinion contrary to his physician's but that he did not do so. *Id.* at 313.

After Stoops was notified that he did not qualify for FMLA leave, he continued to accumulate absences, which he attributed at least partially to his chronic fatigue syndrome. *Id.* One Call denied Stoops FMLA leave, and terminated him as soon as he exceeded the number of absences permitted under One Call's attendance policy. *Id.* at 311. Stoops argued that One Call could not terminate him unless they requested another physician's certification. *Id.* at 313. The court acknowledged that under 29 C.F.R. § 825.303(b), the defendants could have investigated further if they required additional information. *Stoops*, 141 F.3d at 312. In denying Stoops' claim, however, the Seventh Circuit found that "[w]here an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not

entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence." *Id.* at 314. In such cases, the employer is aware that the reason for the absence is not qualifying based on the physician's certification. *Id.* at 313. With respect to Stoops' failure to provide contrary information, the Seventh Circuit found particularly relevant the fact that Stoops (1) was aware of the negative certification, (2) knew that One Call was relying on the negative certification and (3) knew that any continued absences would lead to his firing under One Call's no-fault attendance policy. *See id.*

Defendants argue that the instant case is like *Stoops* because they received a negative certification from Dr. Saksena, they informed Lara of the negative certification, they relied on the negative certification to deny his leave request, and there were no further certifications despite defendants repeated requests. (Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. at 7-10.) Thus, defendants claim that they were under no obligation to grant Lara any rights under the FMLA.

Defendants' reliance on *Stoops* is unavailing. As an initial matter, in *Stoops,* the only certification received by One Call from the plaintiff's physician was a negative certification. *Id.* at 311. In contrast, here, while defendants initially received a February 21 release stating that Lara could work, they subsequently received the February 25 note stating that Lara would miss work "on a periodic basis." Then, only upon speaking with Dr. Saksena did defendants purportedly receive a negative certification.

More problematic for defendants' summary judgment motion, however, is the fact that the negative certification comes secondhand from Coari, with only tenuous corroboration. Dr. Saksena stated that while he remembers speaking to Coari, he recalls only answering Coari's

questions concerning whether Lara was a danger to other people. (Saksena Dep. at 34-35.) Dr. Saksena stated that he had no recollection of telling Coari that Lara could return to work upon taking his medication. (*Id.*) Because Dr. Saksena has no recollection of making the statements, a genuine issue of material fact exists as to whether the statements were made to Coari and to what extent they were made.

Moreover, a genuine fact issue exists regarding Lara's awareness of the negative certification. In *Stoops*, the plaintiff knew his doctor had given a negative certification, knew his employer was relying on it as a disqualifying factor under the FMLA, and was aware that he would be fired under the no-fault attendance policy if his absences continued. *Stoops*, 141 F.3d at 313. Here, no undisputed evidence can be discerned from the record that Lara was aware that Dr. Saksena had given a negative certification subsequent to the February 25 note and that defendants were relying on it to deny him FMLA leave. Defendants point to an April 2, 1999 memorandum, apparently written by Banas to Lara's "file," that they claim shows that Lara was informed about the negative certification. (*See* Def.'s Reply in Supp. of Def.'s Mot. for Summ. J., Ex. D.) In the memorandum, Banas discusses a March 25, 1999 union meeting regarding Lara's absences, which Lara apparently attended. The memorandum states: "Central Grocers stated that they had spoken with the employee's [Lara's] doctor and that according to the Doctor, Mr. Lara was able to take his medication and return to work after a short rest period." (*Id.*) However, not only was this evidence submitted in defendants' reply brief and not as part of defendants' Local Rule 56.1 Statement or as a response to plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Facts, but the memorandum does not conclusively establish that Lara was actually and adequately informed that the prior negative certification was inadequate (the

memorandum is unclear as to who made the statement, when it was made and to whom it was made). Indeed, Lara maintains that defendants never advised him of the insufficiency of Dr. Saksena's note. (Pl.'s Statement of Add'l Facts, ¶ 4.)[3] Thus, there is a disputed issue of fact as to what Lara was told regarding the information in the February 25 letter and, therefore, whether Lara had an opportunity to counter Dr. Saksena's conclusion, if true, that Lara did not have to be off work for his conditions.[4]

Because a genuine issue of material fact exists on the issue of medically necessary leave, defendants motion for summary judgment is denied.[5]

**B. Recertification**

In the alternative, defendants argue that even if Lara's physician did certify to FMLA-qualifying leave, summary judgment is appropriate because Lara did not present recertification of his absences from a treating physician after they requested that he do so. Defendants maintain that at both the August 16 and October 21, 1999 meetings, they requested that Lara provide recertification of his condition from a health care provider.

---

[3]While it is clear at the very least that Lara, in his statement of additional facts, disputes whether he was given notice of the alleged insufficiency of Dr. Saksena's note, Lara cites Exhibit I, attached to plaintiff's response to defendants motion for summary judgment, as support. The court can find no such support in that exhibit. Perhaps this is an oversight on plaintiff's part. Nevertheless, plaintiffs still disagree that Lara was informed, and there is still a genuine issue of material fact as to whether he was actually and adequately informed.

[4]There may also be a genuine issue of material fact concerning the propriety of defendants' contact with Lara's physician. Under 29 C.F.R. § 825.307(a)(1), when an employee submits a complete certification from a health care provider, the employer is not allowed to request additional information from the employee's health care provider unless the employer's own health care provider contacts the employee's provider with the employee's permission. While defendants argue that Coari had Lara's permission to contact Dr. Saksena, all that is apparent from the record, as Lara points out, is that Lara was present when the initial call was placed with Dr. Saksena, which was later returned to Coari while he was at his daughter's basketball game. (Coari Dep. at 95-96; Pl.'s Resp. to Def's. 56.1 Statement, ¶ 19.)

[5]Because there are disputed issues of fact on whether the leave was medically necessary, there are necessarily genuine issues of fact as to whether Lara was given proper notice of FMLA rights.

With respect to the August 16 meeting, defendants point to Lara's deposition where he responded to a question concerning whether he had been asked for recertification by explaining that "John Coari asked me but I don't remember when." (Def.'s Rule 56.1 Statement, ¶ 25; Lara Dep. at 37-38.) As Lara points out, however, the record is less than clear as to whether Lara is referring to the original request for a physician's note or a subsequent request for a physician's note. (Pl.'s Resp. to Def.'s 56.1 Statement, ¶ 25.) In addition, Lara later testified that defendants did not ask for recertification after he produced the note from Dr. Saksena. (*Id.*; Lara Dep. at 71.) Defendants further point to Coari's testimony that, at the August 16 meeting, Lara agreed to furnish a recertification. (Def.'s Rule 56.1 Statement, ¶ 26; Coari Dep. at 125.) As Lara points out, however, the evidence that Lara made such a statement appears in a memorandum prepared after the October 21 meeting. (Pl.'s Resp. to Def.'s 56.1 Statement, ¶ 25.) No testimony or other evidence establishes that Lara agreed to provide a recertification at the August 16 meeting itself. Thus, a genuine issue of material fact exists as to whether such a request was made at the August 16 meeting.

With respect to the October 21 meeting, defendants contend that it is undisputed that they asked for recertification on that date. Defendants' contention that a request for recertification at the October 21 meeting allows them to terminate Lara on the same day, however, is puzzling. Defendants' argument is that Lara did not provide for recertification after he was asked to do so, and on this basis they were within their rights to terminate Lara without regard to the FMLA. Even if this court accepted that defendants did request a recertification on October 21,[6] Lara

[6]Lara does point to evidence that leaves the issue open as to whether such a request was even made. This includes Banas' testimony that Banas did not recall such a request and the fact that Banas' notes concerning the meeting say nothing about such a request. (Banas Dep. 58-59.)

would have to be given some time to comply with this request. Thus, defendants' attempt to rely on a recertification request from the October 21 meeting in support of their motion for summary judgment is unavailing.

Because there is a genuine issue of material fact with respect to recertification, defendants are not entitled to summary judgment on this ground either.

**CONCLUSION**

For the reasons stated above, the court denies defendants' motion for summary judgment [#16].

ENTER: Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 4, 2002